From S. D. Gettig, Bellefonte, Pa.

## Sones's Case.

*John B. Greer*, for petitioner; *James W. Hutchison*, for Butler County.

GALBREATH, P. J., Feb. 9, 1929.—The salary board of the county, consisting of the county commissioners and the county treasurer, at their meeting on Jan. 8, 1929, fixed the salary of the said deputy prothonotary at $125 per month. From the action of the salary board, the prothonotary, H. N. Moon, appeals to the court, alleging that the salary so fixed is inadequate in amount. To the petition of the prothonotary to have the amount increased, the county commissioners and county treasurer make answer, setting forth that the salary fixed for the said deputy is as large, with one single exception, as that fixed for the deputies of any other of the officers of the county; that amount is as large as is being paid by business men and corporations for like services; that the receipts of the office of prothonotary were not sufficient during the year 1928 to pay the salaries of the office and the expenses, showing a deficit for said year of $169.09; that in practically every other county of the sixth class the receipts of the office of prothonotary pay all salaries of the office and show a balance in favor of the counties.

The office of prothonotary, like the other county offices, was created for the purpose of performing certain functions intended to secure social order and the welfare of the people of the county. We may assume that the primary purpose of the creation of the office of prothonotary, as also in the case of the other county offices, was to have the work committed to that particular office well done. If the performance of these duties in this manner, and as an incident to their performance, was more than self-sustaining, the additional income should go into the county treasury. The primary purpose, however, was not to make the office a source of income to the county treasury.

The salaries of the prothonotaries in counties of the class to which Butler County belongs prior to 1923 were paid out of the fees of the office, salaries so fixed being $2000, with 50 per cent. of the additional fees received over

and above that amount after deducting the expenses of the office, the additional 50 per cent. going into the county treasury. This system did not work well, for the reason that in some cases the number of clerks and deputies and the salaries paid were so manipulated as to virtually consume all the income. For this reason, no doubt, the fixing of salaries was placed in the hands of a salary board, consisting of the county commissioners and the county treasurer, with the right of appeal from their decision in any particular case.

The position of deputy prothonotary approximates more nearly the position of deputy register and recorder than any other deputy in any county office in point of importance and necessary efficiency on the part of the person filling that position. If possible, the duties of the deputy prothonotary are more varied than those of the deputy in the office of the register and recorder. The prothonotary's office has to do with the indexing of judgments and liens upon real estate in the county, which in turn affects the question of title, which in many instances grows out of liens entered in that office. The varied character of the business carried on in the prothonotary's office requires a multiplicity of indices to be kept in proper order and accurate entries to be made daily. Failure in this respect not only involves the prothonotary in pecuniary liability, but may very seriously affect the rights of others in a variety of ways. Inasmuch as the prothonotary cannot in person perform all these duties, it is highly important that his deputy should be competent and experienced in order to insure their rightful performance. The deputy prothonotary acts in more than a clerical capacity. In all ministerial matters affecting the office, the act of the deputy is the act of the prothonotary. In addition to this, under the Act of May 26, 1897, P. L. 100, the deputy prothonotary acts in the place, name and stead of the prothonotary in all matters relating to the performance of duties of such prothonotary in case of his sickness, absence or other temporary disability.

It is evident in consideration of these things that the deputy prothonotary acts in a more than clerical capacity. Salaries paid to clerks in the business world can hardly be taken as a criterion by which to judge the value of the services of an efficient deputy prothonotary. The ability and capacity of a deputy prothonotary are very largely different from those of one employed as clerk in a commercial capacity. The duties of the deputy are peculiar to the office, thus taking away any basis of comparison.

In the present instance, the deputy, Jean McCandless Sones, has been acting as such in the Prothonotary's Office of Butler County for a period of almost six years. Her efficiency and faithfulness are evident to all those having business relations with the office. The petition for appeal sets forth that the income of the office, over and above office expenses for the year 1928, was about $700. The answer thereto alleges that there was a deficit of $169.09. This difference, we assume, grows out of the fact that the expenses of purchasing dockets, filing cases, etc., for the year are counted office expenses by the salary board. If, however, the salary of the deputy is to be affected by the necessary expenditures of the office for any particular year, it would scarcely be equitable to charge up against that particular year those expenditures for dockets, filing cases, furniture, etc., which are permanent acquisitions on the part of the county and will serve the purpose, not only of the prothonotary then in office but his successors, it may be, for many years to come. However this may be, as already stated, the primary question is not one of income through the prothonotary's office to the county treasury, but rather the question of having the work done well. The testimony on the part of members of the bar, who have almost daily business to transact in and

356

with the prothonotary's office, is to the effect that the salary of $125 per month is not an adequate salary for the duties performed and that a reasonable salary would be $150 per month. This testimony is of the highest importance, for the reason that it is based upon actual observation of the work being done by the present deputy and not upon any theory of comparison with other offices or other counties.

In conformity with these views, the appeal of the prothonotary is sustained and the salary of Jean McCandless Sones as deputy prothonotary is fixed at $150 per month, and a bill of exceptions is sealed for respondent.

From Thomas H. Greer, Butler, Pa.